Kevin P. Rooney, #107554
Of Counsel, HAMMERSCHMIDT LAW CORPORATION
2445 Capitol Street, Suite 215
Fresno, CA 93721
Tel: (559) 233-5333
Fax: (559) 233-4333

Attorney for Defendant, ERIK OSORIO OLIVAREZ

N THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:24 MJ 121 |
| Plaintiff, | Defendant Osorio's Detention Hearing Brief Re: PreTrial Release or Temporary Release |
| vs. | Date: October 30, 2024 |
| ERIK OSORIO OLIVAREZ, | Time: 2:00 p.m. |
| Defendant. | Location: Hon. Erica P. Grosjean |

I.      Summary of Argument

The government violated Federal Rule of Criminal Procedure 5 by delaying Mr. Osorio's initial appearance in order to transport him to the Eastern District of California from Los Angeles County. The government has repeatedly violated Rule 5 and appears to have done so in order to gain an advantage in detention/release litigation. The appropriate sanction is Mr. Osorio's release pending trial.

The Bail Reform Act mandates consideration of a defendant's 'physical and mental condition' in the Court's initial determination whether to release or detain. The statutory language is that the Court 'shall' … 'take into account' available information concerning 'the person's character, physical and mental condition.' 18 U.S.C. § 3142(g)(3)(A). Consideration of the individual defendant's physical and mental conditions/health is necessary so that detention or

1

conditions of release are reasonable and not excessive in relation to the permissible purposes of assuring a defendant's appearance and/or protecting the community. Temporary release due to compelling reasons is also statutorily authorized. § 3142(i)(4).

On October 22, 2024 (last Tuesday), Mr. Osorio and his significant other, Maite Celis, were arrested at their Valencia, California home. The government proceeded with Ms. Celis' arrest and detention despite that the fact that Ms. Celsie was in her 40th week of pregnancy. Ms. Celis was transported to a hospital on Friday, October 26. About 6:00 a.m. on Monday October 28, she gave birth to their daughter. She is their first child.

Consideration of Mr. Osorio's mental health in these extraordinary circumstances, favors release on conditions or temporary release.

1. The Government's Due Process Violation Weighs In Favor Of Release

Federal Rule of Criminal Procedure 5(a)(1) requires any person making an arrest in the United States take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer. On October 22, Mr. Osorio was arrested in Valencia, which is in the Central District of California and adjacent to this District. Rule 5(c)(2) addresses this exact situation and provides:

> If the defendant was arrested in a district other than where the offense was allegedly committed, the initial appearance must be:
>
> (A) in the district of arrest; or
>
> (B) in an adjacent district if:
>
>> (i) the appearance can occur more promptly there; or
>>
>> (ii) the offense was allegedly committed there and the initial appearance will occur on the day of arrest.

2

The government violated Rule 5 by not bringing Mr. Osorio before a Central District Magistrate Judge.  The arrest was at approximately 7:00 a.m. on October 22. (No discovery has been provided so counsel is relying on other sources of information.) Mr. Osorio was placed in a law enforcement car and sat there for approximately 80 minutes. Subsequently, law enforcement officers spoke with Mr. Osorio.  At approximately 10:00 a.m., the officers told Mr. Osorio that he would be taken to Fresno.

Mr. Osorio did not make his initial appearance until this Court's October 23rd Magistrate Judge Duty 2:00 p.m. duty calendar. *See* Docket entry 27.

Under the Central District of California's internal policies, matters from the Los Angeles County, including Valencia, are assigned to the Court's Western Division and Criminal Duty matters are heard at the Edward R. Roybal Courthouse in downtown Los Angeles. *See,* Exhibits 1 and 2, Central District of California Jurisdiction Map and Location Information for different types of  matters. (Counsel downloaded these items and Exhibit 3 from the CDCA website). At the Roybal Courthouse, Criminal Duty matters are handled at 11:30 a.m. and 1:30 p.m. *See,* Exhibit 3, Criminal Duty Calendar for October 29, 2024.

Mr. Osorio should have been transported to the Roybal Courthouse for an Initial Appearance on the day of his arrest – October 22. If the government claims an appearance was not possible on October 22, the Central District remained the required venue, because the Criminal Duty Calendar is held earlier there than in Fresno.

The violation of Rule 5 in Mr. Osorio's case is more than technical.  This is not the first time a Fresno prosecution has violated Rule 5.  Counsel addressed a Rule 5 violation in the case of *United States v. Emarie Ornelas*,  1:20 CR 241 DAD/BAM, Docket entry 170.  Counsel's brief addressed the *Ornelas* Rule 5 violation starting at page 8 and is attached as Exhibit 4.

3

The government appears to deliberately avoid the Central District of California to gain an advantage in detention/release litigation. The Central District of California is widely viewed as more receptive to release requests than this district and statistical data from the United States Courts supports that conclusion. The most recent statistics are for the year ending September 30, 2023 and they show that the Central District detained and never released 46.0% of defendants; the corresponding figure for this district was 68.7%. *See,* Exhibit 5, United States Courts, Table H-14A, PreTrial Release and Detention, Excluding Immigration Cases.[1]

The government may argue that the type of cases and defendants prosecuted in this district and the Central District are not necessarily the same and therefore a comparison of the two district's detention rates is not necessarily valid; i.e. this District has prosecuted a more 'detainable' population of defendants. The United States Court's statistical reporting regarding PreTrial Release violations rebuts that argument.  Defendants released by the Central District have a much higher percentage of violations, 14.7%, compared to this district's 6.6% violation rate.  Both districts have tiny rates of failures to appear; 13/2003 or 0.65% for the Central District while this district's rate is 3/692 or 0.43%  (50% less failures to appear than the Central District).  If the two districts were deciding to detain or release defendants using similar criteria, their subsequent outcomes, percentages of violations, would be roughly the same. Contrary to that potential argument, the statistics show that the Central District allows a higher risk population to be released. *See,*  Exhibit  6, United States Courts, Table H-15, Pretrial Services Violation Summary Report.[2]

---

[1] Exhibit 5 presents data for the 12 month period ending September 30, 2024 which is the most recent data counsel could find.  The EDCA PTSO data from the annual report distributed on October 25, 202 indicates that as of the period ending June 30, 2024, this district's detention rate was 58.5%.  Data for the CDCA was not provided.

[2] Exhibit 6 presents data for the 12 month period ending September 30, 2024 which is the most recent data counsel could find.  The EDCA PTSO data from the annual report distributed on

The usual remedy for a violation of Rule 5 is suppression of any evidence obtained because of the delay. *United States v. Peeples*, 962 F.3d 667, 687 (2nd Cir. 2020); *U.S. v. Boche-Perez,* 755 F.3d 327, 334 (9th Cir. 2014). The fruit of the Rule 5 violation is ordinarily a confession, however, at least as far as counsel is aware, there was no confession or other fruit of the violation. Does that mean there was a wrong, but there is no remedy, and the government can ignore Rule 5 without any consequence? Both *Peeples* and *Boche-Perez* rejected that premise.

The *Peeples* decision denied the defendant's motion to dismiss his Indictment but noted, "We do not address here, much less consider, whether an egregious delay in arraignment may violate some other right, such as the constitutional guarantee to due process, which may in turn provide the basis for a more drastic remedy in a criminal proceeding, including dismissal." *Id.* at 687, n.33 (citations omitted.) Similarly, the *Boche-Perez* decision declined to suppress the defendant's statement but stated, "The U.S. Attorney is CAUTIONED, however, that Rule 5(a)'s command that a prisoner be presented to a magistrate without unnecessary delay does not mean when optimally convenient." *Id.* at 339, n.7 (capitalization in original).

The violation here was repeated and afforded the government an advantageous venue for its litigation. Mr. Osorio's release would appropriately address the violation in this matter.

---

October 25, 202 indicates that as of the period ending June 30, 2024, this district's PreTrial violation rate was 6.1% while the nation rate was 16.4%. Data for the CDCA was not provided. This district had 6 failures to appear in 676 cases; a rate of 0.89%.

2. <u>Mr. Osorio Should Be Released</u>

Whether the Court is considering initial or temporary release, detention or conditions of release cannot be excessive in relation to the permissible purposes of assuring a defendant's appearance and/or protecting the community. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *United States v. Rueb*, 612 F.Supp.2d 1068, 1072 (D. Neb. 2009). The extraordinary circumstances of this case, and their impact on Mr. Osorio's mental health, are important factors for this Court to consider in deciding whether to detain or release. A father's early bonding with his children is widely recognized as extremely important.[3]

The Bail Reform Act and longstanding precedents support Mr. Osorio's release due to mental health concerns. Statutorily, PreTrial detention is permissible only if the Court finds that no condition of release, or combination of conditions, would <u>reasonably</u> assure the defendant's appearance and the safety of the community. 18 U.S.C. §3142(e)(1) (emphasis added)  The Bail Reform Act mandates that the Court 'shall' … 'take into account' available information concerning 'the person's character, physical and mental condition' and any doubts about the propriety of release should be resolved in favor of the defendant. 18 U.S.C. § 3142(g)(3)(A); *United States v. Townsend*, 879 F.2d 989, 994 (9th Cir. 1990).

Conclusion

For the reasons noted above, Mr. Osorio should be released.

Dated:  October 29, 2024                              Respectfully submitted,

 /s Kevin Rooney
KEVIN P. ROONEY
Attorney for defendant ERIK OSORIO

---

[3] All government employees are entitled to 12 weeks of paid leave when a child is born or adopted. *See,* Exhibit 7, Government Accountability Office publication re paid parental leave.